**IN THE UNITED STATES DISTRICT COURT+**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LANDO L. LYNCH,<br><br>        Petitioner,<br><br>v.<br><br>JEROME R. WALSH, Superintendent, and<br>THE ATTORNEY GENERAL OF THE<br>STATE OF PENNSYLVANIA,<br><br>        Respondents. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 2: 13-cv-1493<br><br>Senior United States District Judge<br>Terrence F. McVerry<br><br>United States Magistrate Judge<br>Cynthia Reed Eddy |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.  RECOMMENDATION

It is respectfully recommended that the petition for a writ of habeas corpus filed by state prisoner Lando L. Lynch pursuant to 28 U.S.C. § 2254 be denied and that a certificate of appealability be denied.

## II.  REPORT

### A.  Relevant and Procedural Background

Petitioner, Lando L. Lynch ("Petitioner" or "Lynch"), is challenging the judgment of sentence that was imposed upon him by the Court of Common Pleas of Allegheny County on June 25, 2003, after a jury found him guilty of murder of the first degree, a violation of the Uniform Firearms Act ("VUFA") for carrying a firearm without a license, and one count of possessing an instrument of crime.  Judge Kathleen A. Durkin sentenced Lynch to a mandatory term of life imprisonment for the murder conviction and to a consecutive 19 to 84 months on the VUFA conviction.  No further penalty was imposed on the remaining charge.  (Sentencing

Transcript, at 8). Attorney Warner Mariani ("Trial Counsel") represented Lynch during trial and sentencing.

Lynch, through new counsel, attorney John Kent Lewis ("Appellate Counsel"), filed a timely direct appeal to the Superior Court, which was docketed at 437 WDA 2007. On March 28, 2006, the Superior Court affirmed on the merits Lynch's judgment of conviction and sentence. Some of the essential background of this case (which is substantiated by this Court's review of the state court record) is succinctly set forth in the Memorandum of the Superior Court of Pennsylvania affirming Lynch's judgment of sentence on direct appeal:

> On the evening of March 16, 2002, Officer James Payne of the City of Pittsburgh Housing Authority Police Department was dispatched to respond to a report of a shooting at the Whiteside Road housing complex in the Hill District section of Pittsburgh. Upon arrival at the scene, Officer Payne discovered the victim, 16 year-old Domenique Johnson, clutching the side of his stomach near the back door of 892 Whiteside Road. The victim subsequently died later that evening.

> That same evening, Pittsburgh homicide detective Timothy Nutter spoke with Tracy Johnson,[1] who lived on the second floor of the building located at 805 Whiteside Road. Johnson informed Detective Nutter that while she did not directly observe the shooting, she heard three or four gunshots and a female scream, after which she called 911.[2] Detective Nutter also interviewed Darcell Boyd, a friend and former classmate of the victim, who had seen the victim talking with Lynch on the night of the murder. According to Boyd, he observed the victim and Lynch engaging in a conversation in the courtyard of the housing complex, during which, Lynch accused the victim of stealing his tennis shoes. Thereafter, Boyd stated that Lynch then held a "rusty brown .32 gun" in his right hand, point it at the victim's stomach from a distance of no more than three or four feet away, and shot him.

> _____

> [FN 1] Johnson bears no relation to the victim.

> [FN 2] Johnson later told Detective Nutter that she had known Lynch for two or three years prior to the shooting, and that the two had an arrangement whereby Johnson would wash Lynch's clothes in return for payment in drugs.

> _____

*Commonwealth v. Lynch* 1352 WDA 2003 (Pa. Super. Ct. 2006), (unpublished memorandum), *appeal denied*, 229 WAL 2006 (Pa. 2006) (table). The Pennsylvania Supreme Court denied further review on October 5, 2006.

On August 28, 2007, Lynch filed a timely *pro se* petition for relief pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa. Cons. Stat. § 9541 – 9546. Judge Durkin recused and the matter was reassigned to Judge Jeffrey A. Manning. The Office of Conflict Counsel was appointed and Attorney Lauren A. Melfa thereafter filed a counseled amended petition. The PCRA court (Judge Manning) held an evidentiary hearing on November 19, 2009. (HT 11-1602). Before the PCRA court entered a decision, Lynch requested permission to file a second amended petition, which request the PCRA court granted. On December 1, 2011, the PCRA court held a second evidentiary hearing to address Lynch's additional claims. (HT 12-0707). On December 7, 2011, the PCRA court denied Lynch's petition.

On October 29, 2012, the Superior Court affirmed the decision of the PCRA court's decision to deny Lynch relief under the PCRA.[1] On November 13, 2012, through counsel, Lynch requested reargument before the Superior Court *en banc*, which was denied on December 28, 2013. The Pennsylvania Supreme Court denied further review on June 27, 2013.

Lynch initiated the present proceedings in this Court by filing a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He raises seven claims for relief. (ECF No. 4). Respondents filed an answer and the relevant state court records. (ECF No. 21). In addition to the Petition and Answer, the Court has reviewed the transcript of Lynch's jury trial held in state court from March 31, 2003 through April 3, 2003 before Judge Kathleen A. Durkin, as well as

---

[1] On appeal, Attorney Anna Kayleigh Shebs of the Office of Conflict Counsel represented Lynch.

the transcripts of the hearings held before Judge Jeffrey A. Manning on November 19, 2009 and December 1, 2011, with respect to Lynch's PCRA petition. The matter is ripe for disposition.

**B.    Standard of Review**

1.    28 U.S.C. § 2254

This case is governed by the federal habeas statute applicable to state prisoners. 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L.No. 104-132, 110 Stat. 1214, enacted on April 24, 1996 ("AEDPA"). Under this statute, habeas relief is only available on the grounds that Lynch's convictions were obtained in violation of his federal constitutional rights. 28 U.S.C. § 2254(a). Errors of state law are not cognizable. *See., e.g., Priester v. Vaughn*, 382 F.3d 394, 402 (3d Cir. 2004) ("Federal courts reviewing habeas claims cannot 'reexamine state court determinations on state-law questions.'") (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). *See also Real v. Shannon,* 600 F.3d 302, 309 (3d Cir. 2010).

AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). It "requires federal courts collaterally reviewing state proceedings to afford considerable deference to state courts' legal and factual determinations." *Lambert v. Blackwell*, 387 F.3d 210, 234 (3d Cir. 2004).

AEDPA's standard of review is codified at 28 U.S.C. § 2254(d) and provides as follows:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Thus, AEDPA circumscribes a federal habeas court's review of a state prisoner's constitutional claim when the state court adjudicated that claim on the merits and denied it. For the purposes of § 2254(d), a claim has been "adjudicated on the merits in State court proceedings" when a state court decision is "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Robinson v. Beard*, 762 F.3d 316, 324 (3d Cir. 2014) (quoting *Simmons v. Beard*, 590 F.3d 223, 232 (3d Cir. 2009)).

A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court[,] 28 U.S.C. § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," *Williams v. Taylor*, 529 U.S. 362, 405 (2000), or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent." *Id*. at 406. Few adjudications by state courts fall within the § 2254(d)(1)'s "contrary to" clause.

Most state court's adjudications must be evaluated under § 2254(d)(1)'s "unreasonable application" clause. "If the state-court decision 'identifies the correct governing legal principle' in existence at the time, a federal court must assess whether the decision 'unreasonably applies that principle to the facts of the prisoner's case'." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (quoting *Williams v. Taylor,* 529 U.S. 362, 413 (2000)).

The Supreme Court of the United States has stressed the "highly deferential" review that

this Court must accord the state court's decision under § 2254(d)(1):

> We have explained that "an <u>unreasonable</u> application of federal law is different
> from an <u>incorrect</u> application of federal law." *Williams v. Taylor*, 529 U.S. 392,
> 410 (2000). Indeed, "a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that the relevant state-
> court decision applied clearly established federal law erroneously or incorrectly."
> *Id.* at 411. Rather, that application must be "objectively unreasonable." *Id.* at
> 409. This distinction creates "a substantially higher threshold" for obtaining relief
> than *de novo* review. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). AEDPA
> thus imposes a "highly deferential standard for evaluating state-court rulings,"
> *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997), and "demands that state-court
> decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19,
> 24 (2002) (per curiam).

*Renico v. Lett,* 559 U.S. 766, 773 (2010) (emphasis in original). Even more pointedly, the

Supreme Court elaborated:

> If this standard is difficult to meet, that is because it was meant to be. As
> amended by AEDPA, § 2254(d) stops short of imposing a complete bar on
> federal-court relitigation of claims already rejected in state proceedings . . . . It
> preserves authority to issue the writ in cases where there is no possibility
> fairminded jurists could disagree that the state court's decision conflicts with this
> Court's precedents. It goes no further.

*Harrington v. Richter*, 562 U.S. 86, 102 (2011).

Finally, the test for § 2254(d)(2)'s "unreasonable determination of facts" clause:

> is whether the petitioner has demonstrated by "clear and convincing evidence," §
> 2254(e)(1), that the state court's determination of the facts was unreasonable in
> light of the record. *See Rice v. Collins*, 546 U.S. 333, 338-39 (2006) ("State-court
> factual findings, moreover, are presumed correct; the petitioner has the burden of
> rebutting the presumption by 'clear and convincing evidence'.") (quoting §
> 2254(e)(1)) (*citing Miller-El v. Dretke*, 545 U.S. 231, 240 (2005)); *see also
> Simmons v. Beard*, 590 F.3d 223, 231 (3d Cir. 2009) ("Under the § 2254 standard,
> a district court is bound to presume that the state court's factual findings are
> correct, with the burden on the petitioner to rebut those findings by clear and
> convincing evidence."). Importantly, the evidence against which a federal court
> measures the reasonableness of the state court's factual findings is the record

evidence at the time of the state court's adjudication.  *Cullen v. Pinholster,* -- U.S. ---, 131 S.Ct. 1388, 1401-03 (2011).

*Rountree v. Balicki*, 640 F.3d 530, 537 – 38 (3d Cir. 2011).

Specific findings of fact made by a state court have always been afforded considerable deference in federal habeas, even prior to the enactment of AEDPA.  As the United States Court of Appeals for the Third Circuit explained:

> It is a well-established principle of federal law that state trial judges deserve substantial deference.
>
> > Face to face with the living witnesses, the original trier of the facts holds a position of advantage from which appellate judges are excluded.  In doubtful cases, the exercise of his power of observation often proves the most accurate method of ascertaining the truth . . . how can we say he is wrong?  We never saw the witnesses.

*Nara v. Frank*, 488 F.3d 187, 201 (3d Cir. 2007) (quoting *United States v. Oregon Medical Society*, 343 U.S. 326 399 (1952) (quoting *Boyd v. Boyd,* 169 N.E. 632 (N.Y. 1930)).  AEDPA continued that substantial deference and requires that "a determination of a factual issue made by a state court <u>shall be presumed to be correct</u>.  The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1) (emphasis added).

    2.    <u>Threshold Requirements under 28 U.S.C. § 2254</u>

    a.    *AEDPA's Statute of Limitations*

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under AEDPA's one-year limitations period. 28 U.S.C. § 2244(d). Lynch had until November 1, 2013 to file for federal habeas relief.  Giving Lynch the benefit of the prisoner mailbox rule, the Court finds that Lynch initiated this federal habeas proceeding on

October 8, 2013, the date the petition was signed and placed in the prison mailing system. Therefore, Lynch's claims are timely under AEDPA's statute of limitations.

### b. *Exhaustion*

Next, the Court must address the threshold question of whether Lynch exhausted the "remedies available [to him] in the courts of the State." 28 U.S.C. § 2254(c). Respondents acknowledge, and the Court agrees, that each of Lynch's seven claims are exhausted.

### c. *State Court Procedural Default*

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the doctrine of procedural default. Respondents acknowledge, and the Court agrees, that none of Lynch's claims are procedurally defaulted. Therefore, the Court will turn to the merits of Lynch's claims.

### C. Discussion of Petitioner's Claims

Lynch raises the following seven claims in his federal habeas petition:

1. Whether trial counsel was ineffective for failing to call alibi witness Viola Jones?

2. Whether trial counsel was ineffective for failing to call eyewitness Myron Cox?

3. Whether trial counsel was ineffective for failing to conduct a reasonable investigation that would have resulted in the discovery of witness Mona Davenport?

4. Whether trial counsel was ineffective failing to conduct a reasonable investigation that would have resulted in the discovery of witness Derrick Lawrence (eyewitness)?

5. Whether the Commonwealth committed *Brady* violations for failing to disclose exculpatory or impeachment evidence?

6. Whether the trial court erred in failing to declare a mistrial *sua sponte* based on comments made by the prosecutor during closing arguments?

7.    Whether the trial court erred in failing to grant petitioner's request for mistrial based on the Commonwealth's failure to disclose evidence.

The Court will now proceed to address seriatim each of these claims. Because Lynch's claims were adjudicated on the merits in state court, Lynch "may obtain federal habeas relief under AEDPA <u>only</u> if the state court decision was (1) 'contrary to, or involved an unreasonable application of clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding'." *Grant v. Lockett,* 709 F.3d 224, 231 (3d Cir. 2013) (quoting § 2254(d)) (emphasis added).

1.    *Claims 1 – 4, Ineffective Assistance of Counsel*

Lynch's first four claims are raised in the context of ineffective assistance of counsel. Lynch argues that trial counsel should have called Viola Jones to give alibi testimony and Myron Cox to give eyewitness testimony; and should have conducted an investigation to discover Monea Davenport,[2] who was present at the scene of the shooting, and Derrick Lawrence, an eye witness to the shooting. Under the now familiar *Strickland* standard, Lynch must show that his counsel's performance was deficient and that this deficiency prejudiced his defense.   *Strickland v. Washington,* 466 U.S. 668, 687 (1984).

The PCRA court recognized these general principles, but "ultimately analyzed [Lynch's] claim[s] under a more specific standard applied by Pennsylvania courts when ineffective assistance claims are predicated on counsel's failure to call a witness at trial."   *Gregg v. Rockview*, 596 F. App'x 72, 76 n.4 (3d Cir. 2015) (citing *Commonwealth v. Clark*, 961 A.2d 80, 90 (Pa. 2008) (requiring defendant to establish that (1) the witness existed; (2) the witness was

---

[2]    The record is not consistent with the spelling of Ms. Davenport's first name.  At times she is referred to as Monea, other times Mona, and still other times as Monet.

available to testify for the defense; (3) counsel knew, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the witness' testimony was so prejudicial as to have denied defendant a fair trial.)[3]

      a.    *Failure to Call Viola Jones and Myron Cox*

The PCRA court concluded that the claim that trial counsel was ineffective in failing to present Viola Jones and Myron Cox was meritless. Trial counsel testified that although Lynch had given him the names of Jones and Cox, his investigator was not able to locate either of these individuals. (HT, 11/19/09 at 5, 8). Trial counsel testified that he was never advised that either Jones or Cox were present in the courtroom during the trial.

Viola Jones testified that she was living in Philadelphia from shortly after the shooting through the time of the trial. Had she been called to testify at trial, Jones would have said that Lynch, who was her cousin, was over at her mother's house the entire day of the shooting. (HT 11/19/09 at 53). Contrary to trial counsel's testimony, Jones testified that she advised trial counsel that she was in the courtroom and willing to testify. (*Id*. at 52-53).

Myron Cox testified that he never spoke with trial counsel or his investigator prior to trial, and while he did attend the trial, he did not approach them during the trial.

---

[3]      The United States Court of Appeals for the Third Circuit has noted that it is "troubled" by the requirement that a PCRA petitioner must show that a witness was "ready, willing and able to testify at trial" as defense counsel can compel a witness to appear at trial and testify through the use of a trial subpoena. *Gregg v. Rockview*, 596 F. App'x 72, *76 n. 4 (3d Cir. 2015) (citing *Grant v. Lockett*, 709 F.3d 224, 239 n. 10 (3d Cir. 2013)). As will be discussed *infra*, Lynch's trial counsel testified that he was unable to subpoena Viola Jones, Myron Cox, and Mona Davenport as he was not able to locate these individuals. And as to the fourth individual, Derrick Lawrence, trial counsel testified that he had no prior knowledge of this individual. Hence, the denial of Lynch's claims was not based on the witnesses being "ready, willing and able to testify at trial," but rather that counsel was unable to subpoena these witnesses.

Lynch testified that he told his trial counsel he wanted to call Jamar Lynch, Myron Cox, Viola Jones, and Brittany Jurgan as trial witnesses and that when he saw Viola Jones and Myron Cox in court for his trial, he told his attorney they were there. (HT at 58 - 63).

An evaluation of the failure on the part of defense to call witnesses falls squarely within the first prong of *Strickland*, which pertains to whether the attorney made his tactical decisions "in the exercise of reasonably professional judgment." *Strickland,* 466 U.S. at 690. *See also Duncan v. Morton*, 256 F.3d 189, 201 (3d Cir. 2001) (citing *Strickland*, and concluding that the failure to use certain testimony "amounted to a tactical decision within the parameters of reasonable professional judgment").

After observing the witnesses and listening to their testimony, the PCRA court found that the testimony of trial counsel was more credible than the testimony Lynch and his witnesses, and this Court sees no basis to second guess that credibility determination. Specifically, Judge Manning found as follows:

> The claim that trial counsel was ineffective in failing to present either Myron Cox or Viola Jones is meritless. Trial counsel credibly testified that he was not able to locate either of these witnesses in order to secure their appearances. Myron Cox confirmed that he never spoke with trial counsel or his investigator prior to trial and did not approach them during the trial. If, as he claims, Mr. Cox was present, his testimony establishes that defense counsel did not know he was there and had no reason to know. The defendant's claims to the contrary are simply not believable.
>
> As for Viola Jones, once again, this Court finds the testimony of trial counsel to be more credible than the testimony of either defendant or Ms. Jones. She acknowledged that she was living in Philadelphia from shortly after the shooting through the time of the trial. That is consistent with trial counsel's testimony that he knew this witness was living in Philadelphia, but did not have an address or phone number for her. In addition, the defendant suffered no prejudice because Viola Jones' testimony would have been cumulative to

testimony already offered at trial through Tamara Jones and Britney Jurgan,[4] both of whom testified that the defendant was with them at the Jones' residence in Northview Heights. Jurgan and Tamara Jones both testified that Viola Jones was present as well. A defendant is not prejudiced by trial counsel's failure to present cumulative evidence. *Commonwealth v. Spotz,* 896 A.2d 1191 (Pa. 2006).

PCRA Opinion and Order of Court, 12/07/2011.

On federal habeas review, the factual finding as to the credibility of trial counsel's testimony is entitled to a presumption of correctness under § 2254(e)(1) and Lynch can only rebut the presumption by clear and convincing evidence, which he has not done.[5] In light of trial counsel's testimony which was found credible by Judge Manning, this Court cannot conclude that trial counsel was ineffective for failing to serve a trial subpoena on witnesses for whom he was unable to locate. Lynch has failed to show that the decision of the PCRA court that his trial counsel was not ineffective for failing to call Viola Jones and/or Myron Cox as witnesses was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the PCRA court's ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the PCRA hearing.

The Superior Court also agreed "with the trial court's finding that the absence of Ms. Jones's testimony did not prejudice [Lynch] because her testimony would have been cumulative

---

[4]     As with Ms. Davenport, the record is not consistent with the spelling of Britney Jurgan's name; however, at the evidentiary hearing she spelled her name as "B-R-I-T-A-N-N-Y J-U-R-N-I-G-A-N." (N.T. at 330).

[5]     The Superior Court, citing *Commonwealth v. Dennis*, 17 A.3d 297, 305 (Pa. 2011), stated that it would not disturb the PRCA court's credibility finding that trial counsel's testimony was more credible than that of Lynch or Viola Jones or Myron Cox. ("[a] PCRA court's credibility findings are to be accorded great deference . . . where the record supports the PCRA court's credibility determinations, such determinations are binding on a reviewing court"). Superior Court Memorandum, 12/7/2011 at 7.

to alibi testimony given by her sister, Tamara Jones, and Brittany Jurgan, who testified at trial that [Lynch] never left the Jones's residence the weekend of the shooting." Superior Court Memorandum, 12/7/2011 at 7. The Court agrees with the determination of the Superior Court that Viola Jones's testimony would have been cumulative to testimony fully developed during the direct and cross examinations of Tamara Jones and Brittany Jurgan (TT at 314 – 333). Both women testified that Lynch was at Tamara Jones's house all weekend and that Viola Jones was also present. Therefore, the state court's finding of no prejudice is a reasonable finding and is clearly supported by the record. For all these reasons, the Court recommends that Claims 1 and 2 be denied.

b. *Failure to Interview and Call Monea Davenport*

In the Second Amendment to his Amended PCRA petition, Lynch, through counsel raised the following issue:

> Attorney Warner Mariani, trial counsel, was ineffective for failing to interview and call to testify at trial Monea Davenport. See police supplemental report dated 3/16/02. Her statement was in direct contravention of Commonwealth's alleged eyewitness Tracey Johnson.

"Second Amendment to Defendant's Amended Post Conviction Relief Act Petition," ECF No. 21-3.

The PCRA court's opinion did not separately articulate its reasons for dismissing the Davenport claim. The Superior Court found the claim waived because "Appellant never raised this claim in his PCRA petition." Superior Court Memorandum, 10/29/12 at 10 (ECF No. 21-5 at 10). It appears, however, that the Superior Court erroneously found the claim waived as the claim was raised in the "Second Amendment to Defendant's Amended Post Conviction Relief Act Petition." (ECF No. 21-3 at 29).

For a number of reasons, the Court recommends that this claim be denied. First, to support his claim on collateral review, Lynch relies on two police reports that reflect that City of Pittsburgh officers conducted brief interviews with Davenport.

The first police report states as follows:

MONE (SIC) DAVENPORT – Was walking up sidewalk when she heard shots. Did not see shooting, but did see victim run from courtyard and across Whiteside Road.

(Police report of 3/16/2002) (ECF No. 21-4 at 48). The Supplemental Report dated 3/27/03 states as follows:

On this date [3-27-03] the writers went to the Whiteside Rd. area in an attempt to locate Moneau Davenport. After talking to several people on the street, a person pointed out Ms. Davenport, who was sitting in a playground which is located in front of 800 Whiteside Rd. The writers approached Ms. Davenport and identified themselves and explained to her why they were there. Ms. Davenport stated that she did not want to talk to the writers. She said that her attorney instructed her not to talk to the police without him being present. The writers asked Ms. Davenport who her attorney was? She stated that his name was William something. The writers asked Ms. Davenport if she would get in contact with her attorney so they could talk to her about the above case? She stated that she would.

On Friday 3-28-03 the writers contacted Ms. Davenport by phone and asked her if she had been in contact with her attorney yet? Ms. Davenport stated, no! The writers asked her if she was going to contact her attorney? Ms. Davenport stated, she wasn't sure. The writers informed Ms. Davenport that it was very important that she did, so they could talk to her about Orlando Lynch's case. At this time the conversation was concluded.

(Police Report of 3/27/03) (ECF No. 21-4).

In his brief to the Superior Court, Lynch argued that "[i]t necessarily follows that if City of Pittsburgh Police Detectives and Police Officers were able to locate Davenport, [then] surely Trial Counsel should have been able to locate her and interview Davenport, and it is unreasonable that he was unable to do so." (ECF No. 21-4 at 30).

This argument is speculative at best and completed unsupported by the record. The two reports reflect that police officers on two occasions, almost a year apart, were able to locate and speak to Davenport. These reports do not establish that trial counsel was constitutionally ineffective because he could not locate her with his investigator. Trial counsel testified that while Lynch gave him Davenport's name as a potential witness prior to trial, his investigator was unable to locate or subpoena her. (H.T. at 5). The PCRA court found the testimony of trial counsel to be credible.

The record before the PCRA court supported its conclusion to dismiss Lynch's claim that trial counsel was ineffective for failing to call Davenport at trial. Lynch did not produce any evidence to support his claim that her testimony would have helped his case nor was the claim developed with any meaningful testimony. Davenport herself has never testified to support Lynch's claim and any suggestion about what she might have testified to is pure speculation. Moreover, Lynch has failed to articulate how anything contained in the police reports proves that Davenport's alleged testimony would have changed the outcome of his trial. Lynch has failed to overcome the presumption that counsel is effective or to prove any of the prongs of an ineffectiveness claim on this issue. Accordingly, the Court recommends that Claim 3 be denied.

     c.     *Failure to Investigate and Discover Derrick Lawrence*

Under *Strickland*,

[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Gregg*, 596 F. App'x at 77 (quoting *Strickland*, 466 U.S. at 691); *see also  Rolan v. Vaughn*, 445 F.3d 671, 681-82 (3d Cir. 2006).

Lynch argues that had trial counsel investigated Myron Cox more thoroughly, trial counsel would have learned of the existence of Derrick Lawrence and would have developed an exculpatory defense at trial, namely that someone other than Lynch shot the victim.[6] The fatal flaw in this argument though is that trial counsel testified that he was not able to locate Myron Cox and the PCRA court found that trial counsel credibly testified on that issue.

The PCRA court found that Lynch failed to establish that defense counsel knew or should have known of Lawrence's existence.  PCRA Opinion and Order of Court, 12/07/2011.  The Superior Court affirmed on the merits stating:

> We agree with the trial court's finding that [Lynch] did not establish that defense counsel knew or should have known of Lawrence's existence.  (citation omitted). In addition, [Lynch] failed to establish that Lawrence would  have been available and willing to testify at trial.  At [Lynch's] PCRA hearing, Lawrence admitted that he did not know that [Lynch] had been charged with the murder he witnessed and did not contact police about the shooting as he was 'on the run' as there were warrants out for his arrest on his own criminal charges.  PCRA Hearing, 11/19/09, at 31.  We cannot find that Lawrence would have testified at [Lynch's] trial when he was attempting to prevent the police from discovering his whereabouts.  The trial court properly rejected [Lynch's] claim that Counsel was ineffective for failing to present Lawrence as a witness.

*Id*. at 9-10.  The Court finds that because there was no mention of Lawrence in the police reports or any other discovery material, Lawrence was unknown to trial counsel before trial. Counsel cannot be found to be ineffective for failing to call a witness that he did not know, or have any reason to know, existed.

---

[6]     Lawrence testified at the PCRA hearing that he witnessed the shooting and the shooter did not match the physical description of Lynch.

Lynch has failed to show that the decision of the PCRA court that his trial counsel was not ineffective for failing to discover or interview Derrick Lawrence was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States, or that the PCRA court's ruling resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, this Court recommends that Claim 4 be denied.

2. _Claim 5: Brady Violation and Claim 7: Trial Court Error – Failure to Declare a Requested Mistrial._

Claims 5 and 7 are intertwined and are based upon an alleged violation of the Fourteenth Amendment Due Process Clause. In Claim 5, Lynch claims that the prosecution violated its obligations under _Brady v. Maryland_, 373 U.S. 82 (1963), and in Claim 7, Lynch claims that the trial court erred in failing to grant his request for a mistrial based on the Commonwealth's failure to disclose evidence. Specifically, Lynch claims that the Commonwealth failed to provide him information from pretrial interviews with Tracy Johnson and Darcell Boyd.

The circumstances surrounding the undisclosed Johnson statement is best summarized by quoting directly from the Superior Court's opinion, which addressed the merits of Lynch's claim as follows:

> Prior to trial, the Commonwealth provided defense counsel with a transcript of Johnson's police interview as well as the initial police report. On direct examination, the Commonwealth elicited testimony from Johnson alleging that approximately five days before the shooting, an altercation had ensured in her daughter's apartment in the Whiteside housing complex between an unknown individual and Myron Cox, a friend of Lynch. N.T., 04/01/03, at 118-19. Johnson further testified that the unknown man subsequently dropped a gun, which was later recovered by Cox. Id. at 119. Johnson speculated that the gun which Cox recovered was the same gun she had seen Lynch use during the March 16, 2002, shooting. Id. Johnson further testified that, contrary to her initial statements to the police, she had actually witnessed the shooting, rather than

17

merely having heard it. Id. at 127-28. Johnson explained that she was initially afraid to talk to the police, because one month prior to the March 16th shooting, Lynch's brother, who still lived in the apartment building at the time of the murder, threatened her with a gun and accused her of "snitching" on him for selling drugs. N.T. 04/01/03, at 128.

After defense counsel effectively impeached Johnson during cross examination by emphasizing the inconsistencies between her trial testimony and the report she had initially given to the police, the Commonwealth made a reference on redirect examination to a pretrial interview with Johnson that had taken place the week or so preceding the trial. Id. at 163. At that point, defense counsel asked for a sidebar and immediately requested a mistrial based on the fact that he had not received any report regarding such an interview, and was thus without prior knowledge that Johnson had previously seen the gun used in the shooting, or that Lynch's brother had previously threatened her. Id. at 164.

After hearing argument at sidebar, the trial court ruled that the Commonwealth failure to reveal any specific information from the most recent interview with Johnson did not result in prejudice of such severity as to warrant a mistrial. Id. at 168. We agree.

. . .

After a thorough review, we cannot conclude that Johnson's comments from the undisclosed interview were such that the nondisclosure to the defense undermined the outcome of the trial. Lynch readily admits that despite the Commonwealth's failure to disclose Johnson's testimony concerning the prior threats and prior observations of the murder weapon, trial counsel "effectively impeached Johnson regarding the inconsistencies, conflicts, and omissions between her past statements and trial testimony" during cross examination. Appellant's Brief, at 11 (citing N.T., 04/03/03, at 139-61). Thus, the jury was able to evaluate the evidence that Lynch now complains the Commonwealth failed to turn over to him in a timely manner. While we do not condone the Commonwealth's failure to disclose the testimony arising out of the undisclosed interview,[7] we do not find that Lynch suffered any significant prejudice stemming from the Commonwealth's interview of Johnson so as to deprive him of his right to a fair and impartial trial.

> [FN 7] We also note that Lynch does not claim, nor does the record show, that the Commonwealth ignored any specific request for the information garnered from the interview; neither does it appear the Commonwealth otherwise acted in bad faith in its failure to disclose the information from Johnson's pretrial interview.

> Nor do we agree that the Commonwealth's conduct constituted "prosecutorial gamesmanship" or "trial by ambush," as Lynch so contends. Appellant's Brief, at 12-13 (citations omitted). Accordingly, we find no abuse of discretion in the trial court's decision to deny Lynch's request for a mistrial based upon the Commonwealth's failure to disclose the statements made by Johnson prior to trial.

Superior Court Memorandum, 03/28/06 (ECF No. 21-2). The record reflects that all of the information from Johnson's pretrial interview came out during her direct examination. When trial counsel asked for a mistrial, the prosecutor responded that he had provided the details of the discussion with Johnson to trial counsel – not in the form of a report, but rather by talking with him about it. (N.T. at 164). Defense counsel acknowledged that the prosecutor had told him about certain things, but argued that he had failed to tell him about other things, namely that Johnson believed that she had seen the murder weapon before, in a prior incident involving Lynch's associate, Myron Cox, and that she had been threatened previously by Lynch's brother. (N.T. at 164-66).

The Superior Court also addressed the merits of Lynch's claim concerning Darcell Boyd, as follows:

> Lynch next raises an argument on appeal wherein he contends that the Commonwealth's admitted failure to disclose information from a pretrial interview with Boyd similarly constituted trial by ambush. Appellant's Brief at 15. This argument is based upon previously undisclosed pretrial statements, concerning a pretrial interview during which Boyd expressed fearfulness about testifying and was assured that should he be adjudicated delinquent,[7] the Commonwealth would request that the trial court place him out of state for his protection. N.T., 04/02/03, at 250-54. Lynch contends that this omission was intended to "bolster the witness's credibility and re-enforce the desired impression that Appellant and those associated with him were dangerous individuals." Appellant's Brief at 15. While we again empathize with Lynch's frustration with the Commonwealth's continued failure to divulge pretrial information, we again agree with the trial court's conclusion that the omission in this instance did not warrant a mistrial. While Boyd's statements regarding his fears for personal

---

[7] Boyd was awaiting a hearing in juvenile court on allegations of delinquency. (N.T. at 226).

safety were disclosed in front of the jury, the testimony concerning a promise of protection was confined to discussion at sidebar, out of the jury's hearing.[8]  While we acknowledge that had defense counsel known of this information beforehand, he may have addressed the issues of Boyd's fears in his opening statement, there is nothing to support the contention that had the information been disclosed prior to trial, the results of the proceeding would have been different.  See *Commonwealth v. Jones*, 637 A.2d 1001, 1004 (Pa. Super. 1994) (en banc).  nor do we find that Lynch has alleged sufficient prejudice to warrant a new trial.  We therefore do not find the trial court's denial of a mistrial constituted an abuse of discretion.

*Id.*

The record reflects that all of the previously undisclosed information from Boyd's pretrial interview came out during his direct testimony.  At side bar, defense counsel acknowledged that the prosecutor had told him that he had spoken with Boyd and that Boyd was being uncooperative, but that the prosecutor had not informed him that Boyd had expressed concerns about his fearfulness to testify or that the prosecutor had made a promise to Boyd in exchange for his testimony.

After hearing argument outside the presence of the jury, Judge Durkin recessed for approximately three hours (N.T. at 260, 265), in which to give defense counsel time to proceed based on the information he had just received. When court resumed, defense counsel presented a written motion for a mistrial, which Judge Durkin denied, as follows:

> THE COURT:  All right, after reviewing the case law, the arguments of counsel and my notes, I am denying the motion for mistrial.  I will note your exception, Mr. Mariani,  I understand your position and your argument, but I believe based on everything, the totality of the circumstances, that is the appropriate ruling.

(N.T. at 265).

---

[8]  This appears to be a misstatement, as the trial transcript reflects that when the trial resumed after the side bar, the prosecutor asked Boyd, "And it is a fact that, sir, that you were told by myself and if you were, that was your concern, that if you were adjudicated to be a delinquent, then we would ask your Judge, I believe it was Judge Allen if I'm not mistaken, if she'd considering placing you in a facility out of this state, is that correct?"  To which Boyd replied, "Yes."  (N.T. at 266).

Trial then resumed with Boyd's direct examination. The cross-examination of Boyd followed, but defense counsel asked him no questions regarding his fear of testifying or the recommendation to place him in a facility out of state. (N.T. 269 – 82).

Although this Court, like the Superior Court, is troubled by the prosecution's failure to disclose the statements of Johnson and Boyd, it finds that Lynch was not prejudiced as defense counsel was able to cast some doubt on the testimony and trustworthiness of both Johnson and Boyd. For these reasons, the Court recommends that Claim 5 be denied.

The Court also recommends that Claim 7 be denied. Pursuant to clearly established federal law, a trial court has discretion to grant or deny a motion for mistrial in the absence of a showing of manifest necessity or that the ends of public justice would otherwise be defeated. *Renico v. Lett*, 559 U.S. 766, 774 (2010) ("The decision to declare a mistrial is left to the sound discretion of the judge, but the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes.")

The Superior Court reviewed this claim and concluded that the Commonwealth's failure to disclose the statements resulted in no prejudice which would have warranted a mistrial. This conclusion was neither contrary to nor an unreasonable application of *Renico*.

For all these reasons, the Court finds that there is no basis to disturb the Superior Court's decision as Lynch as failed to show that the Superior Court's determination is contrary to, or an unreasonable applicable of, controlling Supreme Court precedent. Accordingly, the Court recommends that Claims 5 and 7 be denied.

3.    *Claim 6: Trial Court Error – Failure to Declare a Mistrial Sua Sponte*

In his final claim, Lynch contends that the trial court's failure to declare a mistrial *sua sponte* violated his rights to a fair trial and due process under the Fourteenth Amendment. This claim was raised by Lynch in his direct appeal to the Superior Court and is based on statements made by the prosecutor during closing arguments. Specifically, Lynch argues that the prosecutor improperly criticized defense counsel for failing to play to the jury the taped statements of two of the Commonwealth's witnesses – Tracy Johnson and Darcell Boyd, when in fact the trial judge had excluded from evidence both these taped statements. In order to determine whether there was a manifest necessity for declaring a mistrial, the prosecutor's statements must be evaluated to determine whether these comments to the jury "so infect[ed] the trial with unfairness as to make the resulting conviction of a denial of due process." *Greer v. Miller*, 483 U.S. 756, 765 (1987).

In his closing argument, the prosecutor stated:

> Now, both of the Commonwealth's witnesses were placed on a tape recording, one on the 17th of March, approximately three or four hours after this crime happened; one on the 16th of July, almost exactly four months after this crime happened. And ask yourself whether those taped statements contradict anything those witnesses said on the witness chair. You might have a sort of curious thought at this moment about what I'm talking about because you never really heard those tapes now, did you? They're available obviously to both sides. There's a machine right here that would play them. Don't you think that Mr. Mariani, the very wily defense attorney that he is, the excellent attorney that he is, if there was some huge discrepancies between what they told to the police on the taped statement that you could hear in their own voice, totally contradict important details of what they told you when they testified, <u>don't you think he would have pulled the transcript out and showed important discrepancies from those tape recordings.</u>

N.T. at 393 – 94 (emphasis added).

Judge Durkin, in her 1925(a) Opinion rejecting the claim, stated as follows:

> A review of the prosecutor's closing argument, as a whole, reveals that [it] was merely a fair comment on the evidence adduced at trial and did not in any way prejudice Defendant's right to a fair trial. As such, this claim must be rejected out of hand.

Trial Court 1925(a) Opinion at 2-3 (ECF No. 21-2 at 32-33). The Superior Court affirmed and made the following determination with respect to this claim:

> Based upon our review of the record, we agree with the trial court that the Commonwealth's comments in this regard merely constituted a "fair comment on the evidence adduced at trial and did not in any way prejudice [Lynch's] right to a fair trial." Trial Court Opinion, 05/26/05, at 3. Rather it appears from the entire record that the Commonwealth was merely responding to arguments made by defense counsel during his closing argument, attacking the credibility of Johnson and Boyd. See N.T., 04/03/03, at 376-84.[FN 8]
>
> > [FN 8] In his closing argument, defense counsel attacked Johnson's testimony as "flat-out-lies" and Boyd's testimony as contradictory.
>
> As such, we cannot say that the Commonwealth's statements accrued to Lynch any amount of prejudice which would manifestly necessitate a mistrial. Accordingly, we conclude that Lynch's final issue merits no relief.

Superior Court Memorandum, 03/28/2006, at 10-11 (ECF No. 21-2 at 61-62).

A review of the trial transcript reveals that defense counsel attempted to impeach Tracy Johnson during her cross examination by referring to her taped statement and actually showed her a transcript of her taped statement during his cross examination. (N.T. at 144).[9] During his closing argument, defense counsel pointed out inconsistencies between Johnson's trial testimony and taped statement at least six times. (See N.T. at 373, Lines 11 and 20; 374 at Line 14; 375 at

---

[9]    Interestingly, the Commonwealth sought to introduce Boyd's taped statement as a means to rehabilitate him by using prior consistent statements. Defense counsel objected arguing that the witness had already been rehabilitated and introducing the taped statement was cumulative and served no purpose. The trial court agreed and excluded the taped statement. (N.T. 286 – 287).

Lines 13-19; 375 at Line 25; and 376 at Lines 11-18.)  In his closing, trial counsel did not refer to Boyd's taped statement but he pointed out a number of discrepancies between Boyd's trial testimony and Boyd's testimony at the coroner's inquest.  (N.T. at 380).

To counter defense counsel's attack on the credibility of these two witnesses, the prosecution referred to the taped statements in an effort to show the jury that these witnesses had previously provided consistent statements to the police.   After reviewing the prosecutor's comments, this Court cannot find that the comments "so infected the trial with unfairness as to make the conviction a denial of due process."  *Greer*, 483 U.S. at 765.

There is no basis for this Court to disturb the Superior Court's decision as Lynch as failed to show that the Superior Court's determination is contrary to, or an unreasonable applicable of, controlling Supreme Court precedent.   Accordingly, the Court recommends that Claim 6 be denied.

### D.     Certificate of Appealability

Section 102 of AEDPA, which is codified at 28 U.S.C. § 2253, governs the issuance of a certificate of appealability for appellate review of a district court's disposition of a habeas petition. It provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."   "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where the district court has rejected a constitutional claim on its merits, "[t]he petitioner must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id*. Applying those standards here, the Court concludes that jurists of reason would not find it debatable whether each of Lynch's claims should be dismissed. Accordingly, a certificate of appealability should be denied.

### E. Conclusion

For all of the above reasons, it is respectfully recommended that the petition for a writ of habeas corpus be denied. It is further recommended that there is no basis upon which to grant a certificate of appealability.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, the parties are allowed fourteen (14) days after service of this Report and Recommendation, to file written Objections to this Report and Recommendation. Any party opposing the objections shall have fourteen (14) days after date of service to respond to the objections. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

<u>s/ Cynthia Reed Eddy</u>
Cynthia Reed Eddy
United States Magistrate Judge

Dated: June 20, 2016

cc:    LANDO L. LYNCH
       FK 9419
       SCI Retreat
       660 State Route 11
       Hunlock Creek, PA 18621
       (via U.S. First Class Mail)

       Keaton Carr
       Office of the District Attorney of Allegheny County
       (via ECF electronic notification)